IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

_____

| | |
|---|---|
| ZURICH AMERICAN INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TAVISTOCK RESTAURANTS GROUP, LLC, | ) |
| | ) |
| Defendant. | ) |

_____)

## **COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff Zurich American Insurance Company ("Zurich") and for its Complaint for Declaratory Judgment alleges as follows:

1.      Zurich seeks a declaratory judgment with respect to its rights and obligations to Defendant Tavistock Restaurants Group, LLC ("Tavistock") under an insurance policy issued by Zurich to Tavistock, with respect to claims for coverage asserted by Tavistock for alleged losses arising out of the spread of the COVID-19 Virus (defined herein), affecting multiple restaurant locations of the Defendant throughout the United States.

## **THE PARTIES**

2.      Zurich is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New

York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  It is authorized to transact business and has transacted business in Florida.

3.     Tavistock is a Florida limited liability company with its principal place of business in Orlando, Florida.

4.     The managing member of Defendant Tavistock Restaurants Group, LLC is Tavistock Corporation, a Florida corporation.  Thus, for diversity purposes, Defendant Tavistock is a Florida citizen.

## JURISDICTION

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this district and because a part of the events or omissions giving rise to the claim occurred in this district.

## NATURE OF THE CASE

7.     Zurich issued to Tavistock as a First Named Insured a Zurich Edge "All Risk" Commercial Policy with policy number MLP 0140282-05 for the policy period November 21, 2019 to November 21, 2020, which provided, among other coverages and subject to all of its terms, conditions, exclusions and definitions, coverage for "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property," with a limit of liability of $100,000,000 for the total of coverages combined, subject to

applicable deductibles, sub-limits and time limits.  A certified copy of Zurich Policy No. MLP 0140282-05 is attached hereto as **Exhibit 1** ("the Policy").

8.      Defendant owns and operates at least 80 restaurants in Florida, Massachusetts, California, Illinois, Nevada, Georgia, Texas, Oklahoma, and Tennessee.

9.      Due to the 2020 outbreak of the SARS-CoV-2 virus, which causes the disease COVID-19 (the "COVID-19 Virus"), and the resulting stay-at-home or shutdown orders of various government officials and agencies, it is understood that Defendant temporarily ceased dine-in services at a number of its restaurants.

10.     Upon information and belief, Defendant continued reduced operations at its restaurants.  Upon information and belief, some Defendant restaurants have also reopened in phases to provide dine-in services.

11.     Tavistock has made a claim to Zurich contending that it has suffered losses arising from the spread of the COVID-19 Virus and various stay-at-home or shutdown orders that give rise to coverage under certain provisions of the Policy.

12.     Based on the information Tavistock has provided to date, Zurich denied coverage for Tavistock's claim.

13.     Based on the information Tavistock has provided to date, coverage under the Policy is not or may not be afforded for one or more of the following reasons:

a.      There has been no direct physical loss of damage caused by a Covered Cause of Loss to Covered Property at an Insured Location under the terms, conditions and exclusions stated in the Policy.

b.     Under Section 3.03.02.05 of the Policy, the Policy excludes "Loss or damage resulting from the Insured's suspension of business activities, except to the extent provided by this Policy," and the suspension of business activities asserted by Tavistock are not covered or are excluded by the terms, conditions and exclusions of the Policy.

c.     The suspension of business activities asserted by Tavistock are not covered or are excluded under the Policy among other reasons because:

(i)     Under "Exclusions" (Section 3.03) of the Policy, Section 3.03.01 provides in part:

This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01     **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

* * *

3.03.01.03     Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property.

"Contamination(Contaminated)" is defined in Section 7.09 as "Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria,

virus, disease causing or illness causing agent, **Fungus**, mold or mildew."

(ii)    Under "Exclusions," Section 3.03.02 provides in part:

This Policy excludes:

3.03.02.01    Loss or damage arising from delay, loss of market, or loss of use.

(iii)    Under "Definitions," Section 7.11, "Covered Cause of Loss" is defined as "All risks of direct physical loss of or damage from any cause unless excluded." Accordingly, "Covered Cause of Loss" does not include Contamination, defined as any condition of property due to the actual presence of any virus, or any cost due to such condition of property including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.

(iv)    The presence of the COVID-19 Virus on or in property does not cause direct physical loss to or damage of property. To the extent Tavistock contends that any direct physical loss of or damage to property was due to the actual presence of the COVID-19 Virus, such loss or damage is excluded.

(v)    Under the Policy, pursuant to Section IV – Time Element, Section 4.01.01 and Section V - Contingent Time Element, Section 5.02.05, any loss did not result from the necessary Suspension of the Insured's business activities at an Insured Location or Direct/Indirect Dependent Time Element Location; and/or the Suspension was not due to direct physical

loss of or damage to Property (of the type insurable under the Policy) caused by a Covered Cause of Loss at the Location or Direct/Indirect Dependent Time Element Location.

(vi)     Under the Policy, pursuant to Section 4.02.03, "Extra Expense," coverage is afforded only for the "reasonable and necessary Extra Expenses incurred by the Insured… to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property…."  Any loss did not result in the necessary Suspension of the Insured's business activities and/or the Suspension was not due to direct physical loss of or damage to Property (of the type insurable under the Policy) caused by a Covered Cause of Loss.  To the extent that Tavistock contends that loss was suffered due to the actual presence of the COVID-19 virus, such direct physical loss of or damage is excluded under the Policy by the Contamination exclusion, Section 3.03.01, and the definition of "Contamination," which includes any condition of property due to the actual presence of "virus."

(vii)    Under the Policy, pursuant to Section 5.02.03, "Civil or Military Authority," coverage is afforded only for "the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority

that prohibits access to the **Location**.  That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within [5 miles] of the Insured's Location. . . ."  Any order of civil authority at issue here did not prohibit access to any Insured Location and was not made in response to direct physical loss of or damage caused by a Covered Cause of Loss, whether to property within 5 miles of the Insured's Location or elsewhere, but was made in response to a public health crisis and to slow or stop the spread of disease.  To the extent that Tavistock contends that any order of civil authority resulted from the direct physical loss of or damage to property due to the actual presence of COVID-19 virus, such direct physical loss of or damage is excluded under the Policy by the Contamination exclusion, Section 3.03.01, and the definition of "Contamination," which includes any condition of property due to the actual presence of "virus."

(viii)   Under the Policy, pursuant to Section 5.02.15, "Ingress/Egress," coverage is afforded only for the "actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers, customers or employees is prevented by physical obstruction due to direct

7

physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy… The Company will pay for actual Time Element loss sustained… during the time ingress or egress remains prevented by physical obstruction…."  Any loss did not result in the necessary Suspension of the Insured's business activities and/or the Suspension was not due to direct physical loss of or damage to Property (of the type insurable under the Policy) caused by a Covered Cause of Loss.  To the extent that Tavistock contends that loss was suffered due to the actual presence of the COVID-19 virus, such direct physical loss of or damage is excluded under the Policy by the Contamination exclusion, Section 3.03.01, and the definition of "Contamination," which includes any condition of property due to the actual presence of "virus."

(ix)    Under the Policy, any loss insured under any Time Element Coverages applicable during a Period of Liability was not sustained during a Period of Liability because under Section 4.03 the Period of Liability starts from the time of physical loss or damage of the type insured against under the Policy, and here there has been no physical loss or damage of the type insured against.

## COUNT I - DECLARATORY RELIEF

14.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, an actual case or controversy exists between Zurich and Tavistock regarding whether the Policy

affords coverage with respect to Tavistock's claims for losses arising out of the spread of the COVID-19 Virus.

15.     Zurich is entitled to a declaration declaring the parties' rights and obligations under the Policy with respect to Tavistock's claims for coverage, specifically that the Policy does not provide coverage for Tavistock's claimed losses arising out of the spread of the COVID-19 Virus.

## **REQUEST FOR RELIEF**

16.     Zurich requests judgment in its favor declaring the parties' rights and obligations under the Policy with respect to Tavistock's claims for coverage based on the facts, the language of the Policy and applicable law.

17.     Zurich requests all other relief that is just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Dated:   July 21, 2020

By: */s/ Lisa A. Pach*
STROOK STROOK & LAVAN
Lisa Anne Pach, Esq.
Florida Bar Number:  0065002
lpach@stroock.com
asantiesteban@stroock.com
emrodriguez@stroock.com
*Attorneys for Plaintiff Zurich*
*American Insurance Company*

Shari Klevens
DENTONS
1900 K Street NW
Washington, DC 20006
Shari.klevens@dentons.com

*To Apply for Admission Pro Hac Vice on behalf of Plaintiff Zurich American Insurance Company*