**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

|  |  |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, ) ) ) ) | |
| Plaintiff, ) | Case No. 6:20-cv-01295-PGB-EJK |
| v. ) ) | |
| TAVISTOCK RESTAURANTS GROUP, LLC ) ) ) ) | |
| Defendant. ) | |

**PLAINTIFF'S SECOND MOTION FOR FINAL DEFAULT JUDGMENT
AGAINST DEFENDANT TAVISTOCK RESTAURANTS GROUP, LLC**

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Rule 1.07(b) of the Local Rules of the Middle District of Florida, Plaintiff Zurich American Insurance Company ("Zurich") moves for entry of a final default judgment against Defendant Tavistock Restaurants Group, LLC ("Tavistock"), and states:

1. On July 21, 2020, Zurich commenced this declaratory judgment action against Tavistock, seeking a declaration that the commercial insurance Policy (policy number MLP 0140282-05 for the policy period November 21, 2019 to November 21, 2020) issued by Zurich to Tavistock provides no coverage for Tavistock's claimed alleged losses by its series of restaurants arising out of the spread of the COVID-19 Virus. (D.E. #1 ¶¶ 1, 11.) The Complaint was served on Tavistock on July 30, 2020. (D.E. #11.)

2. After Tavistock failed to file a timely response to the Complaint, Zurich pursued a Motion for Entry of Clerk's Default against Tavistock on August 26, 2020.

(D.E. #16.)  A Clerk's Default was then entered against Tavistock for failure to appear, answer or otherwise respond to Zurich's Complaint within the time required by law on September 1, 2020.  (D.E. #17.)

   3.  In conferring with counsel for Tavistock prior to the filing of Zurich's Motion for Final Default Judgment (the "First Motion," D.E. #19), counsel for Zurich and counsel for Tavistock engaged in discussions about whether Zurich would agree to Tavistock's efforts to vacate its default.  Tavistock's counsel confirmed that Tavistock had been aware of this case, but that Tavistock was interested in pursuing its own action in Illinois instead.  Zurich's counsel represented that unless Tavistock agreed to move forward quickly with responding to Zurich's Complaint in this action, Zurich reserved its rights to proceed with a motion for default judgment in light of Tavistock's delinquency and the need for this case to move forward.  Tavistock then rejected Zurich's request, affirming Tavistock's position that it would not proceed with a responsive pleading in this case and confirming its lack of consent to Zurich's request for an entry of default judgment.  Thus, Zurich filed the First Motion on September 18, 2020.

   4.  On September 21, 2020, Tavistock filed a Motion to Set Aside Default and for Extension of Time to Answer or Otherwise Plead (D.E. #23), in which Tavistock argued that good cause existed to excuse its intentional decision not to respond to Zurich's Complaint.  Separately, on September 22, 2020, this Court denied without prejudice Zurich's Motion for Final Default Judgment for a failure to comply with Local

Rule 3.01(g).[1]  Thus, because counsel for Zurich had conferred with counsel to Tavistock prior to the filing of its First Motion, Zurich files this Second Motion to correct that record and in support of an entry of final default judgment against Tavistock.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining default judgment.  First, a plaintiff must apply for an entry of default by the clerk when a defendant fails to plead or otherwise defend a lawsuit.  *Dos Santos v. Gregg Appliances, Inc.*, Case No. 6:10-CV-1947-ORL-28KRS, 2012 WL 13136836, at *1 (M.D. Fla. Sept. 25, 2012).  Second, after receiving a clerk's default, the plaintiff must apply to the district court for a default judgment if the party's claim is not for a sum certain.  Fed. R. Civ. P. 55(b)(2); *Safeco Ins. Co. of Ill. v. Tremblay*, Case No. 2:16-CV-837-FTM-38CM, 2018 WL 3217442, at *2 (M.D. Fla. June 29, 2018).  The issuance of a declaratory judgment regarding insurance coverage is a proper subject of a default judgment. *See Allstate Life*

---

[1] Notably, the fact that Tavistock finally filed its Motion to Set Aside only after Zurich filed its first Motion for Final Default Judgment and prior to this Court's preliminary denial of Zurich's Motion without prejudice does not preclude Zurich's relief now. Indeed, this Court must resolve *both* Zurich's Motion for Final Default Judgment and Tavistock's Motion to Set Aside in determining (1) whether Tavistock was justified in its intentional delay in responding to Zurich's Complaint and (2) whether Zurich's Complaint is sufficiently well-pled to support judgment in its favor.  *See, e.g., Matthew v. Hi*Tech Elec. Displays, Inc.,* No. 804-CV-2021-T-23MSS, 2005 WL 5950966 (M.D. Fla. Oct. 17, 2005) (ruling first on defendant's later filed motion to set aside default before granting plaintiff's motion for default judgment); *Cardiosonx Labs., Inc. v. Aguadilla Med. Servs., Inc.*, 100 So. 3d 285 (Fla. 3d DCA 2012) (trial court required to determine merits of the defendant's pending motion to set aside clerk's default prior to entering final judgment where defendant filed motion to set aside clerk's default and the following day plaintiff filed motion for default judgment).

*Ins. Co. v. Miller*, 424 F.3d 1113, 1114 n.2 (11th Cir. 2005); *see also Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1310 (11th Cir. 2005).

Upon entry of a clerk's default, all well-pled factual allegations of the at-issue declaratory judgment action are deemed admitted. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). However, before judgment is entered pursuant to Rule 55(b), there must be a sufficient basis in the pleadings to support the relief sought. *Atl. Cas. Ins. Co. v. Innovative Roofing Sys., Inc.*, 411 F. Supp. 3d 1287, 1290 (M.D. Fla. 2019). A "sufficient basis" means satisfying the court that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted. *Nationwide Ins. Co. of Am. v. H.H. Pizza, Inc.*, Case No. 8:15-CV-1013-T-30AEP, 2015 WL 6555361, at *1 (M.D. Fla. Oct. 28, 2015) (court satisfied that plaintiffs pled sufficient facts to support their claim for declaratory relief and that the claims alleged in an underlying action were not covered by plaintiffs' insurance policies).

In this matter, a clerk's default has been properly entered against Tavistock. (D.E. #17.) The resulting admissions of fact and the language of and attachments to the Complaint provide a sufficient basis in the pleadings for this Court to enter the requested default judgment. Indeed, there are many terms of the Policy or exclusions that apply here, each of which is dispositive to this case, as addressed below. Because Zurich is not seeking a sum certain, but seeks only a declaration of non-coverage, Zurich moves this Court to enter default judgment against Tavistock.[2]

---

[2] Because Tavistock is a corporate entity, the Service Members Civil Relief Act, 50 U.S.C. app. § 521(b)(1), does not apply.

I. **THIS COURT HAS JURISDICTION**

Zurich has alleged that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. (D.E. #1 ¶ 5.) Zurich is a New York corporation with its principal place of business in Schaumburg, Illinois. (D.E. #1 ¶ 2.) Tavistock is a Florida limited liability company with its principal place of business in Orlando, Florida. (D.E. #1 ¶ 3.) Further, the amount in controversy exceeds $75,000 because the Zurich Policy contains a $100,000,000 limit. *See First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 865 (11th Cir. 2016) ("when an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of ***potential*** liability under its policy"). Accordingly, complete diversity exists and this Court has jurisdiction over this action.

II. **ZURICH HAS STATED A CLAIM FOR WHICH RELIEF MAY BE GRANTED**

Zurich's Complaint is well-pled and sufficiently states a cause of action for declaratory relief. A party seeking a declaratory judgment must allege the existence of an actual controversy between the parties. *Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc.*, 252 F. Supp. 3d 1307, 1309 (M.D. Fla. 2017). An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (internal quotation admitted).

Here, Zurich has pled the existence of an actual controversy between the parties.

(D.E. #1 ¶¶ 1, 14, 15.)  Further, as pled in the Complaint, coverage under the Zurich Policy is not afforded for Tavistock's claimed alleged losses arising out of the spread of the COVID-19 Virus ("Tavistock's Claims") because: (1) any alleged direct physical loss of or damage to property due to the actual presence of the COVID-19 virus is excluded under the Zurich Policy by the Contamination Exclusion and the definition of "Contamination" (D.E. #1 ¶ 13(c)(i)); (2) Tavistock's Claims are not the result of direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property (D.E. #1 ¶¶ 13(a), 13(c)(iii), 13(c)(iv)); and (3) the Policy does not cover business interruption claims relating to COVID-19 (D.E. #1 ¶¶ 13(b), 13(c)(v)-(ix)).  ***Notably, each of these coverage issues operates independently to preclude coverage for Plaintiff's claims in their entirety***; as such, Zurich is entitled to a full declaration of non-coverage as a result of Tavistock's default.

Under the admitted facts of this case and the application of the Policy (a verified copy of which was attached as Exhibit 1 to Zurich's Complaint (D.E. #1-2)), there is no coverage under the Zurich Policy for Tavistock's Claims.

### A. Zurich Sufficiently Pled and Submitted the Applicable Policy Provisions

The interpretation of an insurance contract is a question of law.  *Pac. Emps. Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-CV-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007).  When interpreting an insurance policy, a court's inquiry always "begins with a review of the plain language of the insurance policy as bargained for by the parties."  *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 266 (Fla. 2003).  Thus, a policy provision that is clear and unambiguous "should be enforced according to its terms

whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citation and internal quotation marks omitted).  Here, Zurich pled sufficient facts and Policy terms to support an entry of default judgment.

> 1. **The Policy Excludes Coverage for Losses Due to the Presence of a "Virus," Among Others**

Zurich pled that the following exclusions apply to exclude coverage in full:

> 3.03.   EXCLUSIONS
>
> The following exclusions apply unless specifically stated elsewhere in this Policy:
>
> 3.03.01.   This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.
>
> 3.03.01.01.   **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.
>
> \*\*\*
>
> SECTION VII - DEFINITIONS
>
> 7.09.   **Contamination(Contaminated)** - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

(D.E. #1 ¶ 13(c)(i) and D.E. #1-2, at ECF p. 62.)

The Policy also excludes other sources of Loss:

> 3.03.02.   This Policy excludes:
>
> 3.03.02.01.   Loss or damage arising from delay, loss of market, or loss of use.

7

>   \*\*\*
>
>   3.03.02.05.   Loss or damage resulting from the Insured's suspension of business activities, except to the extent provided by this Policy.

(D.E. #1 ¶¶ 13(b), 13(c)(i), 13(c)(ii) and D.E.#1-2, at ECF p. 25.)

### 2. The Policy Only Provides Coverage for Direct Physical Loss or Damage

As pled in Zurich's Complaint and attached as Exhibit 1 (D.E. #1-2), the Zurich Policy provides, in pertinent part, that there is no coverage for any of Tavistock's claims unless the claims arise out of a "direct physical loss of or damage caused by a Covered Cause of loss":

>   1.01.   INSURING AGREEMENT
>
>   This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

(D.E. #1 ¶ 13(a) and D.E. #1-2, ECF p. 15.)

"Covered Cause of Loss" is defined:

>   7.11.   **Covered Cause of Loss** - All risks of direct physical loss of or damage from any cause unless excluded.

(D.E. #1 ¶13(c)(iii) and D.E. #1-2, ECF p. 62.)

### 3. The Policy Does Not Cover Business Interruption Claims Relating to COVID-19

Separately from the above foundational issues that limit coverage in its entirety, Zurich also pled that Tavistock is not entitled to coverage for its claimed "business

8

interruption" losses based on the following terms of the Policy (which are also each wholly dispositive of Tavistock's claimed losses):

> 4.01.   LOSS INSURED
>
> 4.01.01.   The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.
>
> The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the Location that sustained direct physical loss or damage caused by a **Covered Cause of Loss**.

(D.E. #1 ¶ 13(c)(v) and D.E. #1-2, ECF p. 28.)

> 4.02.   TIME ELEMENT COVERAGES
>
> 4.02.03. EXTRA EXPENSE
>
> The Company will pay for the reasonable and necessary Extra Expenses incurred by the Insured, during the Period of Liability, to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a Location.

(D.E. #1 ¶ 13(c)(vi) and D.E. #1-2, ECF p. 30.)

> 4.03.   PERIOD OF LIABILITY
>
> 4.03.01.01.   For building and equipment: The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or

9

equivalent physical and operating conditions that existed prior to the damage. The expiration of this Policy will not limit the Period of Liability.

(D.E. #1 ¶ 13(c)(ix) and D.E. #1-2, ECF p. 32.)

>5.02.03. CIVIL OR MILITARY AUTHORITY
>
>The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

(D.E. #1 ¶ 13(c)(vii) and D.E. #1-2, ECF pp. 34-35.)

>5.02.05. CONTINGENT TIME ELEMENT
>
>This Policy covers the actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations**, **Indirect Dependent Time Element Locations**, and **Attraction Properties** located worldwide, except for…

(D.E. #1 ¶ 13(c)(v) and D.E. #1-2, ECF p. 35.)

>5.02.15. INGRESS/EGRESS
>
>The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers,

10

>customers or employees is prevented by physical obstruction due to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured Location as stated in the Declarations.

(D.E. #1 ¶ 13(c)(viii) and D.E. #1-2, ECF p. 39.)

These Policy provisions, coupled with the concession of fact created by Tavistock's failure to respond to the Complaint, provide sufficient grounds for this Court to enter judgment, as detailed below.

### B. The Policy Terms, as Pled, Establish That There is No Coverage for Tavistock's Claimed Losses as a Matter of Law

In its Complaint, Zurich seeks an order that "the Policy does not provide coverage for Tavistock's claimed losses arising out of the spread of the COVID-19 Virus." (D.E. #1 ¶ 15.) The Complaint goes on to identify specific Policy provisions, terms, and exclusions that, by their plain language, apply to support a declaration of non-coverage. Notably, had this case proceeded to trial, Zurich would only need to prove the applicability of *one* of these terms or exclusions to obtain a finding that the Policy does not provide coverage for Tavistock's claimed COVID-19 losses. Here, because Tavistock has defaulted and because Zurich's pleading identifies the grounds for a finding of non-coverage, Zurich is entitled to judgment for any of the following reasons, as detailed below: (1) the Policy excludes coverage for losses due to the presence of a "virus"; (2) the Policy only provides coverage for direct physical loss or damage (and the presence of COVID-19 in a restaurant or in the community does not constitute direct physical loss or damage; and (3) any suspension of business activities by Tavistock due to the pandemic is not covered or is expressly excluded by the terms, conditions, and

11

exclusions of the Zurich Policy.

Based on the allegations claimed in Zurich's Complaint, supporting exhibits, and the plain language of the Zurich Policy, there is no coverage afforded under the Zurich Policy for Tavistock's Claims. As such, Zurich has stated a claim for which relief may be granted and this Court should enter a declaratory judgment in Zurich's favor against Tavistock.[3]

### 1. The "Contamination Exclusion" Applies And Bars Tavistock's Recovery in Full

The Policy excludes coverage for losses arising from "Contamination," which is defined to include "the actual presence of any foreign substance . . . **bacteria, virus, disease causing or illness causing agent**."  (D.E. #1 ¶¶13(c)(i)-(iv).)  Because, as alleged in Zurich's Complaint, Tavistock's claims relate to the presence of the COVID-19 virus in its restaurants and/or in the community at large (D.E. #1 ¶¶ 8-11, 13(c)(i), 13(c)(iii), 13(c)(iv)), this exclusion applies and supports total judgment in Zurich's favor.

In addition, the Policy also excludes coverage for "Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the… occupancy, operation or other use . . . of any property."  (D.E. # 1 ¶ 13(c)(i).)  Zurich alleged that Tavistock has claimed losses arising from various "stay-at-home or shutdown

---

[3] Because Zurich's Complaint is well-pled and because Zurich seeks only declaratory judgment (and not an entry of money damages), this Court may and should enter judgment against Tavistock without requiring an evidentiary hearing. *See Safeco Ins. Co.*, 2018 WL 3217442, at *2 n.4 (finding a hearing was unnecessary under Fed. R. Civ. P. 55(b)(2) where Court "does not need to conduct an accounting, decide the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter").

orders of various government officials and agencies" that caused Tavistock to cease or reduce its operation or use of its property. (D.E. #1 ¶¶ 9-11.) Thus, Tavistock's failure to respond to Zurich's pleading means that, as a matter of law, Zurich is also entitled to judgment on the grounds that this Exclusion applies as well.

These well-pled contentions and applicable exclusions support judgment in Zurich's favor.

### 2. Tavistock's Claims are Not the Result of Direct Physical Loss of or Damage Caused by a Covered Loss to Covered Property

Separately from the "Contamination Exclusion," Zurich is also entitled to judgment because it insures only "against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property." (D.E. #1-2 ¶ 1.01, ECF p. 15.) Tavistock contends that it has suffered losses arising from the spread of the COVID-19 Virus and the resulting stay-at-home or shutdown orders of various government officials and agencies. (D.E. #1 ¶¶ 9-11.) Zurich has alleged that there has been no direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property (*Id*. ¶ 13(a)) and that that the presence of the COVID-19 Virus on or in property (or in the community) does not cause direct physical loss to or damage of property (*Id*. ¶¶ 13(c)(iii)-(iv)).[4]

---

[4] Tavistock is not the first policyholder to argue that government orders as a result of the COVID-19 pandemic trigger insurance coverage under provisions similar or identical to the ones in the Zurich Policy; however, many courts nationwide have rejected these claims, finding that the insured's losses did not arise from direct physical loss or damage to property, including in this jurisdiction. *See*, *e.g.*, *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-CIV-Williams/Torres, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (recommending dismissal of complaint seeking coverage for loss of business income as a result of Florida COVID-19 Civil Authority Orders because the requirement that the

The lack of any physical loss or damage of the type insured against by the Policy operates as a total bar to coverage and supports entering judgment in Zurich's favor (in conjunction with the Contamination Exclusion or independently).[5]  Accordingly, Zurich has stated a claim for which relief may be granted.

### 3. Tavistock's Suspension of Business Activities are Not Covered or are Excluded by the Terms, Conditions, and Exclusions of the Zurich Policy

Zurich also alleges that Tavistock's suspension of business activities are not covered by the Policy because: (1) "Suspension," as defined by the Policy, did not actually occur (because many if not all restaurants remained operational, even if in part), and/or was not due to direct physical loss of or damage to property caused by a Covered Cause of Loss (D.E. #1 ¶¶ 9-10, 13(c)(v)-(vi)); (2) suspension was not caused by any civil or military authority prohibiting access to any Insured Location (nor made in response to direct physical loss of or damage caused by a Covered Cause of Loss) (*Id*. ¶ 13(c)(vii)); and (3) ingress or egress to any Insured Location was not prevented by physical obstruction (*Id*. ¶ 13(c)(viii)).  Thus, as separate independent and wholly dispositive grounds, Zurich is entitled to judgment based on these allegations.

---

plaintiff's restaurant close indoor dining to mitigate the spread of COVID-19 was not a direct physical loss).

[5] Notably, the requirement of direct physical loss or damage to property is a prerequisite for many other coverages under the Policy.  For example, any claimed losses under any Time Element Coverages sustained during a Period of Liability are not covered because the Period of Liability starts from the time of physical loss or damage.  Here, because there has been no physical loss or damage of the type insured against, there can be no coverage under any Time Element Coverages.  (D.E. 1 ¶ 13(c)(ix).)

14

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff Zurich American Insurance Company respectfully requests that this Court enter a final default judgment against Tavistock, declaring that there is no coverage for Tavistock's claims arising out of the spread of the COVID-19 Virus and that Zurich has no obligations under the Zurich Policy as it pertains to Tavistock's claims arising out of the spread of the COVID-19 Virus, and award any and all such other relief this Court deems just and proper.

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Rule 3.01(g) of the Local Rule of the Middle District of Florida, Zurich certifies that its counsel has conferred with Tavistock's counsel and that counsel have been unable to resolve the issues raised in this Second Motion. Indeed, as confirmed by Tavistock's subsequent Motion to Set Aside Default (D.E. #23), Tavistock indicated prior to the filing of the First Motion and subsequent to that filing that it opposes the relief sought herein.

This 22nd day of September, 2020

                                             /s/ Shari L. Klevens
                                            Shari L. Klevens, Esq. (*admitted pro hac vice*)
                                            DENTONS US LLP
                                            1900 K Street NW
                                            Washington, D.C. 20006
                                            Telephone: 202.496.7500
                                            shari.klevens@dentons.com
                                            *Counsel for Plaintiff*
                                            *Zurich American Insurance Company*

                Lisa Anne Pach, Esq.
                Florida Bar Number: 0065002
                STROOK STROOK & LAVAN
                200 South Biscayne Boulevard, Suite 3100
                Miami, Florida 33131
                Telephone: 305.789.9331
                lpach@stroock.com
                *Counsel for Plaintiff*
                *Zurich American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, the foregoing Plaintiff's Second Motion for Final Default Judgment Against Defendant Tavistock Restaurants Group, LLC was filed via the Clerk of the Court using the CM/ECF system and served thereby on counsel of record.

       /s/ Shari L. Klevens
Shari L. Klevens, Esq. (admitted pro hac vice)
DENTONS US LLP
1900 K Street NW
Washington, D.C. 20006
Telephone: 202.496.7500
shari.klevens@dentons.com
*Counsel for Plaintiff*
*Zurich American Insurance Company*

Lisa Anne Pach, Esq.
Florida Bar Number: 0065002
STROOK STROOK & LAVAN
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone: 305.789.9331
lpach@stroock.com
*Counsel for Plaintiff*
*Zurich American Insurance Company*