UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ZURICH AMERICAN
INSURANCE COMPANY,**

      **Plaintiff,**

v.                                           Case No: 6:20-cv-1295-PGB-EJK

**TAVISTOCK RESTAURANTS
GROUP, LLC,**

      **Defendant.**

_____/

## ORDER

This cause comes before the Court on Defendant Tavistock Restaurants Group, LLC's Motion to Dismiss or Stay, and Transfer (Doc. 40 (the "**Motion**")), filed September 11, 2020. Plaintiff Zurich American Insurance Company responded in opposition (Doc. 41). Upon consideration, the Motion is due to be denied.

**I.**      **BACKGROUND**

Defendant is a Florida limited liability company whose managing member is a Florida resident and whose principal place of business is Florida. (Doc. 39, ¶¶ 3–4). Defendant operates approximately 80 restaurants, located in Texas, California, Tennessee, Oklahoma, Florida, Massachusetts, Illinois, Nevada, and Georgia. (Doc. 40, p. 2). Of these restaurants, seven are in Florida, and one is in Illinois. (Doc. 40, p. 2; Doc. 41, p. 3).

Plaintiff—a New York corporation with its principal place of business in Illinois—issued a commercial insurance policy (the "**Policy**") to Defendant. (Doc. 41, pp. 2–3). Plaintiff's Georgia underwriter negotiated with and delivered the Policy and other invoices to Defendant's Florida broker. (Doc. 41, p. 3; Doc. 41-3; Doc. 41-4; Doc. 41-5; Doc. 41-6; Doc. 41-7).

On May 18, 2020, Defendant's California risk manager, at the direction of Defendant's deputy general counsel in Texas, instructed its Florida broker to submit a claim for losses caused by the coronavirus pandemic to Plaintiff's Texas claims handler. (Doc. 40-2; Doc. 40-3). After communicating with Defendant's California risk manager, Plaintiff's Texas claims handler denied the claim, addressing the denial letter to Defendant's Florida location, copying Defendant's Florida broker, and using its own Illinois headquarters for the return address. (Doc. 40-2; Doc. 40-4; Doc. 41-9).

On July 21, 2020, Plaintiff filed a one-count complaint for declaratory judgment against Defendant with this Court, seeking to ascertain the parties' rights and obligations under the Policy. (Doc. 1). On July 23, 2020, Defendant filed an identical action for declaratory judgment against Plaintiff in the Circuit Court of Cook County, Illinois. (Doc. 40, p. 4). The next day, Plaintiff removed Defendant's Illinois state court action to the United States District Court for the Northern District of Illinois. (*Id.*). Currently, Plaintiff's motion for transfer to this Court and Defendant's motion to remand to Illinois state court remain pending before the Northern District of Illinois. (*Id.*).

Defendant now moves for transfer to the Northern District of Illinois and for dismissal (or stay) of this action.[1] The matter is ripe for review. (*Id.* at p. 1).[2]

## II. LEGAL STANDARD

A motion to transfer venue is governed by 28 U.S.C. § 1404(a). *See Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *1 (S.D. Fla. Feb. 23, 2009). Under § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. 1404(a). "The standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court, and once a trial judge decides that transfer of venue is or is not justified, the ruling can be overturned only for clear abuse of discretion." *Trace-Wilco*, 2009 WL 455432, at *1 (citing *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991)).

In considering a request to transfer pursuant to § 1404(a), the court must engage in a two-step inquiry. *See Nat'l Tr. Ins. v. Penn. Nat'l Mut. Cas. Ins.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016) (citations omitted). "The court must first

---

[1] Defendant also requests transfer to Illinois state court, but this is impermissible pursuant to 28 U.S.C. § 1404(a), which states that "a district court may transfer any civil action to any other district or division." *See, e.g., Am. Gen. Life Ins. v. Moody*, No. 1:14-CV-3538, 2015 WL 13546623, at *2 (N.D. Ga. Nov. 17, 2015) (stating that § 1404(a) only authorizes transfers between certain federal courts and thereby prohibits a federal court from transferring a case to a state court).

[2] Defendant filed a reply to Plaintiff's response in opposition to the Motion in violation of Local Rule 3.01(d). Therefore, the Court is under no obligation to consider it.

3

determine, as a threshold matter, whether the case could have been filed in the proposed district." *Id.* (citations omitted). "Next, the court must consider 'whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice.'" *Id.* (quoting *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000)). In making this determination, courts in the Eleventh Circuit traditionally consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Kelling v. Hartford Life & Accident Ins.*, 961 F. Supp. 2d 1216, 1218 (M.D. Fla. 2013) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). "It is the movant's burden to establish that a case should be transferred to the suggested forum in the interests of convenience and justice." *Nat'l Tr. Ins.*, 223 F. Supp. 3d at 1242 (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *Colo. Boxed Beef Co. v. Coggins*, No. 8:07-cv-00223, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007)).

Notably, the equitable factors considered in a motion to transfer under § 1404(a) are also relevant to a district court's decision to hear a declaratory judgment action. *Manuel*, 430 F.3d at 1135–36 (stating that "The factors relevant

4

in deciding whether to hear a declaratory judgment action are equitable in nature" and noting that some courts apply the same general factors considered in a motion to transfer when deciding whether to hear a declaratory judgment action). District courts have "unique and substantial" discretion to hear declaratory judgment actions, and such decisions receive abuse of discretion review. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see Rasbury v. IRS*, 24 F.3d 159, 168 (11th Cir. 1994) ("As we have stated previously, the abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." (internal quotations omitted)).

### III. DISCUSSION

The Court follows § 1404(a)'s two-step inquiry, examining whether the proposed transferee court is a sufficient forum and then considering the propriety of transfer or dismissal (or stay). Upon due consideration, the Court finds that the Northern District of Illinois is not a proper venue and that the convenience of the parties and witnesses and the interests of justice weigh against transfer. The Court further finds no reason to dismiss (or stay) the declaratory judgment action.

#### A. Sufficiency of Proposed Venue

Absent unanimous consent to transfer, § 1404(a) requires the proposed transferee court to have personal and subject-matter jurisdiction and to offer an appropriate venue. *See Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1280 (M.D. Fla. 2015). The parties do not contest the Northern District of Illinois'

personal and subject-matter jurisdiction, and therefore the Court limits its analysis to the appropriateness of venue.

Under 28 U.S.C. § 1391(b), venue is proper in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Although Defendant argues that transfer to Illinois is appropriate because Plaintiff has its principal place of business there, § 1391(b)(1) pertains to *Defendant's* residence. (*Id.* at p. 6). Defendant is a Florida limited liability company with its principal place of business in Orlando, Florida, and its managing member, Tavistock Corporation, is a Florida corporation. (Doc. 39, ¶¶ 3–4). As an admitted "Florida citizen," Defendant obviously does not reside in Illinois for purposes of venue. (*Id.* ¶ 4). Venue is clearly proper in this Court under § 1391(b)(1), and Defendant's status as a Florida resident renders § 1391(b)(3) inapplicable.

Additionally, Defendant offers no argument for transfer under § 1391(b)(2), and the Court does not discern any evidence that a substantial part of the events

or omissions giving rise to the claim occurred in Illinois.[3] Likewise, Defendant does not contest Plaintiff's assertion that only one of Defendant's network of restaurants is in Illinois, which is certainly not a substantial part of the property at issue. (Doc. 41, p. 5).[4] Thus, the Court finds that the action could not have been brought in the Northern District of Illinois.

### B. Propriety of Hearing the Declaratory Judgment Action

Although the Court does not need to reach the second step of the § 1404(a) inquiry, it nonetheless must address Defendant's request for dismissal (or stay) of the instant declaratory judgment action. To this end, the Court evaluates the equitable factors pertinent to and often shared by motions to transfer and motions to abstain from adjudicating declaratory judgment actions. *See Manuel*, 430 F.3d at 1135–36.

#### 1. *Convenience of the Witnesses*

First, Defendant contends that Florida is an inconvenient forum because its deputy general counsel resides in Texas and its risk manager resides in California. (Doc. 40, p. 6). Defendant also predicts that Plaintiff's key witnesses reside in Illinois, making Illinois a more convenient forum for both parties. (*Id.* at p. 7).

---

[3] Indeed, as discussed later in this Order, the parties agree that Defendant's Florida broker and Plaintiff's Georgia underwriter negotiated and secured the Policy. Moreover, as outlined above, the denial of the claim has no connection to Illinois other than the standard inclusion of Plaintiff's Illinois return address in the denial letter.

[4] Defendant repeatedly asserts that it operates a national network of restaurants, emphasizing that it only has seven restaurants in Florida whereas one of its chains has 59 locations in Texas alone. (*See* Doc. 40). Notably absent from the Motion is any discussion of Defendant's operations in *Illinois*, which appear to be even smaller than its Florida operations.

Plaintiff states that Defendant's hypothesis about its witnesses is erroneous: it anticipates calling Defendant's employees (in Florida, California, Texas, and possibly elsewhere) as well as its own employees (in Georgia and Texas). (Doc. 41, p. 9). Plaintiff correctly notes that the convenience of employee witnesses is given less weight because the parties can compel their presence at trial. (*Id.* at pp. 9–10); *see Nat'l Tr. Ins.*, 223 F. Supp. 3d at 1243. Finally, and most importantly, Plaintiff aptly observes that Defendant "wholly fails to explain how the location of its own witnesses in Texas and California make *Illinois* a more convenient forum." (*Id.* at p. 9). Thus, the Court finds that Defendant failed to show that Illinois is a more convenient forum than Florida for witnesses.[5] This factor consequently weighs against transfer or dismissal.

    2.    *Location of and Ease of Access to Relevant Documents*

Second, Defendant again "presumes" that Plaintiff's documents are in Illinois. (Doc. 40, p. 7). Yet Defendant offers no reason why Florida inhibits its access to *its own* documents, much less contends that its documents are in Illinois.

---

[5] Plaintiff also mentions that it may call Defendant's Florida brokers. (*Id.*). In analyzing the convenience to third-party witnesses, the Court must determine whether a witness is "key," meaning that her testimony is likely to be significant enough that her presence would be necessary at trial. *Nat'l Tr. Ins.*, 223 F. Supp. 3d at 1243; *see Laica-Bhoge v. Eli Lilly & Co.*, No. 6:14-cv-1286, 2015 WL 3919515, at *5 (M.D. Fla. June 25, 2015) (quoting *J.I. Kislak Mortg. Corp. v. Conn. Bank & Tr. Co., N.A.*, 604 F. Supp. 346, 347 (S.D. Fla. 1985) ("'[A] general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be,' does not warrant transfer under § 1404(a)."). Here, Plaintiff only states that Defendant's Florida broker negotiated and received the Policy. However, the Court does not need to reach the question of whether this is sufficient information to indicate what Defendant's Florida broker's testimony will be because, as stated above, Defendant fails to demonstrate that Illinois is a more convenient forum than Florida. Notably, if Defendant's Florida broker is a "key" third-party witness, then it is clearly more convenient for it to appear in Florida rather than in Illinois.

(*Id.*). "Further, in light of technological advancements in document imaging, management, and retrieval, it is unlikely that document production will be unduly burdensome if transfer is denied." *Mason v. Smithkline Beecham Clinical Lab'ys.*, 146 F. Supp. 2d 1355, 1364 (S.D. Fla. 2001). Finally, the Court notes that this case—which, as the parties agree, concerns the legal interpretation of the Policy—is unlikely to be document-intensive. (*See* Docs. 40, 41).[6] Thus, this factor weighs against transfer or dismissal.

### 3. Convenience of the Parties

Third, Defendant continues its practice of speaking for Plaintiff, arguing that Florida is "far away" from Plaintiff's Illinois headquarters. (Doc. 40, p. 8). It also surmises that Plaintiff "is quite comfortable litigating in both the Circuit Court of Cook County and the Northern District of Illinois" because it is engaged in other unrelated actions in those courts. (*Id.* at p. 9).

Plaintiff does not need or want Defendant's insincere benevolence. Plaintiff responds that it intentionally selected this forum because it regularly conducts business here, and Plaintiff's supposed "comfort level" litigating in other forums is plainly irrelevant. (Doc. 41, p. 8). Defendant never explains how litigating in Florida creates a hardship for *itself*, most likely because it is dubious that litigating

---

[6] Defendant's improper reply to Plaintiff's response provides a litany of "relevant documents" that requires production during discovery, but these documents essentially amount to the Policy and its related forms. (Doc. 42, pp. 4–5). Moreover, even if copious documentary discovery is necessary in this case, technology has made access to such evidence much less burdensome, as stated above.

9

in Florida creates a hardship for a Florida limited liability company with its principal place of business in Florida. (*See* Doc. 40).

### 4. The Forum's Familiarity with Governing Law

Fourth, Defendant argues that Florida law does not apply to this case without identifying *what* law does. (*Id.* at pp. 10–11). Devoid of any analysis, Defendant simply states that Florida law is inapplicable under the significant relationship test,[7] citing *Shapiro v. Associated Int'l Ins.*, 899 F.2d 1116 (11th Cir. 1990). (*Id.* at pp. 10–11).[8] The *Shapiro* court predicted that the Florida Supreme Court would apply the significant relationship test in determining the choice of law rules governing the interpretation of insurance contracts pertaining to real property. *Id.* at 1118–20.

Thereafter, in *State Farm Mut. Auto. Ins. v. Roach*, the Florida Supreme Court unequivocally adopted the *lex loci contractus* rule for insurance contract disputes, but it did not address whether the rule specifically applies to insurance contracts involving real property. 945 So. 2d 1160, 1163 (Fla. 2006); *see Rando v. Gov't Emps. Ins.*, 556 F.3d 1173, 1176 (11th Cir. 2009). Although this question remains unsettled by the Florida Supreme Court, most district courts apply *lex loci*

---

[7] A federal district court sitting in diversity must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, this Court applies Florida's choice of law rules.

[8] Additionally, Defendant repeatedly states that the Policy covers properties across the country. (*Id.*). Plaintiff responds, "Following [Defendant's] argument to its natural conclusion, [Defendant] is advocating for the application in this case of the law of each state in which it has a property. Such an unwieldy and chaotic application of law is unsupported by law or practice." (Doc. 41, p. 14). The Court agrees.

*contractus* to real property insurance contracts given *Roach*'s clear, albeit general, affirmation of the rule. *See, e.g.*, *Pierce v. Prop. & Cas. Ins. Co. of Hartford*, 303 F. Supp. 3d 1302, 1304–05 (M.D. Fla. 2017); *Liberty Mut. Ins. v. Festival Fun Parks, LLC*, No. 12-62212-CIV, 2013 WL 4496511, at *2–5 (S.D. Fla. Aug. 22, 2013) (collecting cases).

"The *lex loci contractus* rule, 'as applied to insurance contracts, provides that the law of the jurisdiction where the contract was *executed* governs the rights and liabilities of the parties in determining an issue of insurance coverage.'" *Pierce*, 303 F. Supp. 3d at 1305 (quoting *Roach*, 945 So. 2d at 1163–64). "The determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done." *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092–93 (11th Cir. 2004) (internal quotations omitted). "The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." *Id.* Specifically, in the context of insurance contracts, the last act necessary to complete the contract is the insurer's communication of acceptance of the insured's offer to purchase insurance. *Pierce*, 303 F. Supp. 3d at 1305 (citing *Sun Capital Partners, Inc. v. Twin City Fire Ins.*, No. 12-CV-81397, 2015 WL 4648617, at *2 (S.D. Fla. Aug. 5, 2015)).

Here, the "last act" occurred when Plaintiff's underwriter communicated binder to insure Defendant's properties on December 5, 2019 at 9:26 A.M. via email. (Doc. 41-5). The email verified the effective date of coverage, confirmed the

11

existence of a contractual relationship between the parties, and attached the instant Policy. (*Id.*). Because this communication was made from Georgia, where Plaintiff's underwriter was located at the time, the rule of *lex loci contractus* requires the application of Georgia law to this matter. (Doc. 41-4, ¶ 1).

However, Defendant does not request transfer to a federal court in Georgia, and there is no reason to believe that the Northern District of Illinois is more familiar with Georgia law than this Court. In other words, this Court and the Northern District of Illinois are equally capable of applying Georgia law in this case, which weighs against transfer or dismissal.[9]

### 5. *Plaintiff's Choice of Forum*

Fifth, Defendant concedes that the Court must give considerable weight to Plaintiff's choice of forum. *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002). In other words, the Eleventh Circuit follows the "first-to-file rule," which favors the forum of the first-filed suit where competing actions involving the same parties and the same issues exist. *Laskaris v. Fifth*

---

[9] Defendant's reply acknowledges that the "last act" occurred in Georgia upon Plaintiff's underwriter's communication of acceptance of Defendant's offer to purchase insurance. (Doc. 42, pp. 8–9). Yet Defendant does not complete the analysis, refraining from the conclusion that Georgia law applies to this case. Instead, it merely states that "Florida law does not and will not apply" without articulating why the application of Georgia law warrants transfer to Illinois.

Defendant also includes an "aside" about Plaintiff's Terms of Use on its Customer Care Center website, which requires controversies to be resolved via arbitration in Chicago under Illinois law. (Doc. 40, p. 8). The Court notes that this case does not arise out of or relate to Plaintiff's online services. Rather, this case concerns the parties' rights under the Policy at issue. Plaintiff notes that Defendant's argument "suggests that if a multinational company puts a forum clause in any contract it enters into, that clause necessarily governs all suits involving that company from that point on, even for entirely unrelated matters and lines of business. There is absolutely no support for this position." (Doc. 41, p. 11 n.5). The Court concurs.

*Third Bank*, 962 F. Supp. 2d 1297, 198–99 (S.D. Fla. 2013); *Glasgo v. Uber Techs., Inc.*, No. 8:19-cv-97, 2019 WL 1998326, at *1 (M.D. Fla. May 3, 2019). The Court only disregards the plaintiff's choice of forum and transfers or dismisses the case if "considerations of convenience, cost, judicial economy, and expeditious discovery and trial process" clearly outweigh its selection. *Response Reward Sys.*, 189 F. Supp. 2d at 1339 (citing *Oakes v. Whitten*, 685 F. Supp. 1228, 1229 (M.D. Fla. 1988)); *see Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." (citation omitted)); *see also Manuel*, 430 F.3d at 1135 (stating that, in determining whether a district court abused its discretion to hear a declaratory judgment action, departure from the first-to-file rule is only warranted when the party objecting to jurisdiction in the first-filed forum demonstrates "compelling circumstances").

Defendant argues that "compelling circumstances" exist that "clearly outweigh" Plaintiff's choice of forum: namely, Defendant believes that Plaintiff engaged in forum shopping. (Doc. 40, pp. 11–12). In support of this contention, Defendant states that Plaintiff took the "unprecedented" step of suing an insured over a pandemic-related claim in Florida instead of its "home" state, that Plaintiff filed this action shortly after denying Defendant's claim, that Plaintiff "snap removed" Defendant's Illinois state action, and that Defendant is the "natural plaintiff." (*Id.* at pp. 11–13).

13

Defendant's position that Plaintiff only wanted to "beat" it in the race to the courthouse is, at best, speculative. It is not unusual for Plaintiff, as an insurer, to seek declaratory judgment as to its obligations to Defendant under the Policy, which would inform Plaintiff of its duties to Defendant and its other insureds. *See Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1246 n.11 (11th Cir. 2000) ("Declaratory judgment actions are routinely used by potential litigants to anticipate each others' [sic] claims."). Nor does Plaintiff's selection of this forum over the Northern District of Illinois appear suspect; it seems logical for Plaintiff, who regularly conducts business in Florida, to sue Defendant, a Florida limited liability company with its principal place of business in Florida, in this Court. In fact, the prompt timing of the suit may indicate that Plaintiff filed this action with the good faith intention of ascertaining its responsibilities under the Policy, and monitoring Illinois' electronic docket for a competing lawsuit does not appear innately suspicious or procedurally improper. Defendant's self-ascribed position as the "natural plaintiff" is inapposite given the lack of clear evidence of procedural fencing.[10]

---

[10] Defendant cites to a Sixth Circuit case for the proposition that "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *AmSouth Bank v. Dale*, 386 F.3d 763, 788–89 (6th Cir. 2004). In that case, receivers for various insurance companies sought to recover embezzled funds from the banks used by the embezzler in his money-laundering scheme. *Id.* at 770. The court found that the banks participated in settlement negotiations and affirmatively represented their willingness to settle "to lull the Receivers into believing that amicable negotiation was still possible" before filing its declaratory action to secure their choice of forum. *AmSouth*, 386 F.3d at 790; *see also Malibu Boats, LLC v. Marine Power Holding, LLC*, No. 3:14-CV-152, 2015 WL 3626997, at *3 (E.D. Tenn. June 9, 2015) (discarding the first-to-file rule where the parties were engaged in negotiations when the plaintiff terminated its purchase order for certain engines and filed suit

Moreover, even if Plaintiff did initiate this case solely in anticipation of litigation, the Court is not required to transfer the action. *See Manuel*, 430 F.3d at 1135 ("Even if a court finds that a filing is anticipatory, this consideration does not transmogrify into an obligatory rule mandating dismissal."); *Nat'l Tr. Ins.*, 223 F. Supp. 3d at 1247 ("Eleventh Circuit precedent does not require the Court to transfer or dismiss a declaratory judgment action when such action was filed anticipatorily."). Thus, given that other factors weigh against transfer or dismissal, as previously discussed, Plaintiff's choice of forum maintains its priority.

### 6. *The Interests of Justice*

Defendant argues that Plaintiff's prior opposition of its motion to set aside the Clerk's Entry of Default, filed in this Court, is "nothing short of egregious." (Doc. 17; Doc. 40, p. 13). Defendant does not cite to any legal authority for this contention, and Plaintiff's previous filing is procedurally proper.

Defendant also argues that the Court should abstain from hearing this case under the *Wilton/Brillhart* doctrine. (Doc. 40, pp. 14–17). Under this doctrine, abstention may be appropriate "'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same

---

on the same day); *Sustainable Low Maint. Grass, LLC v. Cutting Edge Sols., LLC*, No. 14-cv-11894, 2014 WL 4656627, at *4 (D. Mass. Sept. 15, 2014) (dismissing the declaratory action because the plaintiff represented that it would engage in negotiations before filing suit, causing the defendant to forego filing); *Sunrise Senior Living, Inc. v. APB, Inc.*, No. 06-80674, 2006 WL 2852853, at *3 (S.D. Fla. Oct. 3, 2006) (filing suit after receiving notice of defendant's intent to litigate "just hours shy of the announced litigation deadline" to "avoid the usual nondiverse situation of a broker suing both the seller and the buyer involved in a deal from which the broker claims to have been wrongfully excluded"). No such conduct occurred here: the parties were not engaged in negotiations, and there is no indication that Plaintiff received notice of Defendant's intent to litigate before filing this action.

15

parties'" upon the consideration of nine factors. *Ameritas Variable Life Ins. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Billhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). Not only does Defendant fail to expound upon these nine factors, but also there is no parallel state court action. Plaintiff removed the Illinois state court action to the Northern District of Illinois, and neither Defendant's grievance as to this "snap removal" nor the pending motion for remand in the Northern District of Illinois change the fact that, currently, no state court action exists. *See, e.g.*, *Fed. Reserve Bank of Atlanta*, 220 F.3d at 1247 ("It is an abuse of discretion, however, to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist."); *Regions Bank v. Commonwealth Land Title Ins.*, No. 11-23257-CIV, 2012 WL 1135844, at *4 (S.D. Fla. Apr. 4, 2012) (stating that the *Wilton/Brillhart* abstention doctrine does not apply if there is no parallel state court action and that, consequently, the court does not need to analyze the nine factors); *Phil. Indem. Ins. v. Allied Mortg. & Fin. Corp.*, No. 10-61849-CIV, 2011 WL 13214121, at *2 (S.D. Fla. May 9, 2011) (stating that consideration of the nine factors is secondary to the "threshold inquiry" of whether a parallel state court proceeding exists).

Defendant does not address trial efficiency, but Plaintiff argues that the Federal Court Management Statistics, issued by the Administrative Office of the United States, demonstrate that cases in this Court proceed to trial and to disposition faster, on average, than cases in the Northern District of Illinois. (Doc.

41, pp. 15–16; Doc. 41-10). Upon review of these statistics,[11] judicial expediency weighs against transfer or dismissal because, at the very least, there is no "significant difference" in congestion.[12] *Nat'l Tr. Ins.*, 223 F. Supp. 3d at 1247 (quoting *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 805 (M.D.N.C. 2008) ("Courts require a significant difference between districts before finding that congestion merits transfer.")).

### 7. *Other Equitable Factors*

Finally, the Court briefly considers the factors that Defendant failed to raise. The locus of operative facts is "the site of events from which the claim arises," which, in the context of insurance disputes, is either where the contract was made or issued or where the insurer denied coverage. *Nat'l Tr. Ins.*, 223 F. Supp. 3d at 1245–46 (internal quotations omitted). Here, as mentioned previously, Plaintiff issued the Policy in Georgia, and negotiations occurred in Georgia and Florida. Plaintiff's claims handler denied Defendant's claim in Texas. Florida is not the

---

[11] The statistics are as follows for June 2020: the median time from filing to disposition was 11.2 months in the Northern District of Illinois and 5.8 months in this Court; the median time from filing to trial was 41.3 months in the Northern District of Illinois and 26.2 months in this Court; caseload per judge was 434 total filings and 712 pending cases in the Northern District of Illinois and 703 total filings and 567 pending cases in this Court; and the number of civil cases over three years old was 1,282 in the Northern District of Illinois and 438 in this Court. (Doc. 41-10).

[12] Defendant's improper reply asserts that these statistics deserve "minimal" weight because "[t]here is no updated data evaluating pace of litigation in a pandemic" and "[f]ewer pending cases in the Middle District of Florida does not mean those cases will move more quickly than the facts permit." (Doc. 42, pp. 6–7). This may be true, but Defendant misses the point: unless there is a significant difference in efficiency between districts, this factor weighs against transfer or dismissal. Even if the Court disregards these statistics, there is still no evidence that the congestion in this Court warrants transfer to the Northern District of Illinois. If anything, the statistics only bolster the Court's decision to retain the case because it seems that the Northern District of Illinois is more congested.

locus of *all* operative facts, but it is clear that Illinois is not the locus of *any* operative facts. *See id.* Process is available to compel the attendance of unwilling witnesses, and there is no indication of a disparity of means between the parties. Thus, these factors are neutral and weigh against transfer or dismissal.

### IV.   CONCLUSION

For these reasons, it is **ORDERED AND ADJUDEGD** that Defendant's Motion to Dismiss or Stay, and Transfer (Doc. 40) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 4, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties