**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff/Counter-Complaint Defendant, | ) ) ) ) |
| v. | ) ) |
| TAVISTOCK RESTAURANTS GROUP, LLC, | ) ) ) |
| Defendant/Counter-Complaint Plaintiff. | ) ) ) |

Case No. 6:20-cv-01295-PGB-EJK
Consolidated with Case No. 6:20-cv-00830

**ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(c), Zurich American Insurance Company ("Zurich") moves for judgment on the pleadings in its favor as to its Complaint for Declaratory Judgment (D.E. #1) against Tavistock Restaurants Group, LLC ("Tavistock"). This Motion is based on Zurich's Complaint (*id*.) and Tavistock's Answer (D.E. #39) and in accordance with this Court's November 1, 2021 Order dismissing Tavistock's Amended Counter-Complaint (D.E. #112).

## I.   BACKGROUND

### A.   The Pleadings

Zurich's Complaint for Declaratory Judgment seeks a declaration that the property insurance policy issued by Zurich to Tavistock, Policy No. MLP 0140282-05

with an effective date of November 21, 2019 to November 21, 2020 (the "Policy"), "does not provide coverage for Tavistock's claimed losses arising out of the spread of the COVID-19 Virus."  (D.E. #1 ¶¶ 7, 15-16.)

Tavistock "owns and operates at least 80 restaurants in Florida, Massachusetts, California, Illinois, Nevada, Georgia, Texas, Oklahoma, and Tennessee."  (*Id.* ¶ 8; D.E. #39 ¶ 8 (admitted).)  Zurich issued the Policy to Tavistock, a copy of which is attached to the Complaint and its authenticity is not in dispute.  (D.E. #1 ¶ 7; D.E. #39 ¶ 7 (admitted); D.E. #1-2.)  As a result of the SARS-Cov-2 virus, COVID-19, and the civil authority orders entered by various government authorities, Tavistock ceased dine-in services at its restaurants.  (D.E. #1 ¶ 9; D.E. #39 ¶ 9 (admitted).)  Tavistock submitted "a claim to Zurich contending that it has suffered losses arising from the spread of the COVID-19 Virus and various stay-at-home or shutdown orders that give rise to coverage under certain provisions of the Policy," and Zurich denied the claim. (D.E. #1 ¶¶ 11-12; D.E. #39 ¶¶ 11-12 (admitted).)

The Policy covers certain Time Element losses, *i.e.*, the loss of business income resulting from the suspension of the policyholder's business activities, subject to terms and conditions:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be *due to direct physical loss of or damage to Property* (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the Location . . . .

2

(D.E. #1 ¶ 13.c.(v); D.E. #1-2 § 4.01.01 (emphasis added).)   A "Covered Cause of Loss" is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."  (D.E. #1 ¶ 13.c.(iii); D.E. #1-2 § 7.11.)   The Policy also covers "Extra Expense" incurred "due to direct physical loss of or damage caused by a **Covered Cause of Loss**."  (D.E. #1 ¶ 13.c.(vi); D.E. #1-2 § 4.02.03.)

The Policy includes the following coverage provisions:

CIVIL OR MILITARY AUTHORITY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of a civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to a *direct physical loss of or damage* caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. . . .

(D.E. #1 ¶ 13.c.(vii); D.E. #1-2 § 5.02.03 (emphasis added).)

CONTINGENT TIME ELEMENT

This Policy covers the actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from *direct physical loss of or damage* caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations** and **Attraction Properties** . . . .

(D.E. #1 ¶ 13.c.(v); D.E. #1-2 § 5.02.05 (emphasis added).)

INGRESS/EGRESS

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers, customers, or employees is prevented by physical obstruction *due to direct physical loss of or damage* caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured['s] Location as stated in the Declarations . . . .

(D.E. #1 ¶ 13.c.(viii); D.E. #1-2 § 5.02.15 (emphasis added).)

The Policy also contains a Contamination Exclusion, which provides, in part,

as follows:

This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01 **Contamination,** and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

(D.E. #1 ¶ 13.c.(i); D.E. #1-1 § 3.03.01.) "Contamination(Contaminated)" is defined

as "[a]ny condition of property due to the actual presence of any foreign substance,

impurity, . . . pathogen or pathogenic organism, bacteria, virus, disease causing or

illness causing agent . . ." (D.E. #1 ¶ 13.c.(i); D.E. #1-2 § 7.09.)

The Policy further excludes coverage for any "[l]oss or damage arising from

delay, loss of market, or loss of use." (D.E. #1 ¶ 13.c.(ii); D.E. #1-2 § 3.03.02.01.)

The Policy also excludes from coverage any "[l]oss or damage arising from the

enforcement of any law, ordinance, regulation or rule regulating or restricting the . . .

repair, replacement, improvement, modification, . . . occupancy . . . or other use . . . of any property."  (D.E. #1 ¶ 13.c.(i); D.E. #1-2 § 3.03.01.03.)

Tavistock does not dispute the existence of these provisions in the Policy or the authenticity of the Policy itself.  (D.E. #39 ¶¶ 7, 13.)  Tavistock, however, claims that it sustained "direct physical loss of and damage to property at its premises described in the Policy" and that the exclusions do not apply (*id*. ¶ 9) whereas Zurich seeks a declaration that Tavistock did not sustain any direct physical loss of or damage to property and/or that the exclusions apply to bar Tavistock's claim (D.E. #1 ¶¶ 13, 16). Whether there is direct physical loss of or damage to property and whether the exclusions apply are questions of law for the Court and the subject of this Motion.

**B.**   **Tavistock's Declaratory Judgment Counter-Complaint**

Tavistock filed a Counter-Complaint and Request for Declaratory Relief on March 31, 2021.  (D.E. #55.)  In July 2021, Tavistock subsequently filed an Amended Counter-Complaint seeking a declaration that the Policy provides insurance coverage for Tavistock's business interruption losses sustained as a result of "direct physical loss or damage to property" arising from SARS-CoV-2, COVID-19, the COVID-19 pandemic, and government orders and that Zurich improperly denied Tavistock's insurance claim.  (D.E. #82 ¶¶ 1-6, 168-172.)  Zurich moved to dismiss Tavistock's Amended Counter-Complaint on grounds that it failed to state a claim on which relief can be granted, and the Court granted Zurich's motion without prejudice on November 1, 2021.  (D.E. ##85, 96, 112.)

## II.  <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed.  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011), *aff'd*, 719 F.3d 1245 (11th Cir. 2013).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

In ruling on a motion for judgment on the pleadings, the court is not required to consider "general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  Indeed, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent" the court from entering judgment on the pleadings. *Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 757 (11th Cir. 2021) (internal quotation marks and citation omitted).  A court may also consider documents and exhibits attached to the pleadings, *see Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014), and "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern," *Griffin Indus.*, 496 F.3d at 1206.

III.    **MEMORANDUM OF LAW**

The dueling pleadings in this action—Zurich's Complaint and Tavistock's Amended Counter-Complaint—ask for a determination of the same question: whether the Policy provides coverage for Tavistock's purported business income losses allegedly caused by the COVID-19 virus, the COVID-19 pandemic, and government orders shutting down dining.  The Court answered this question in its November 1, 2021 Order holding that Tavistock did not suffer a "direct physical loss" as a result of COVID-19.  (D.E. #112, at 9-10.)  Accordingly, Zurich now requests that the Court apply that holding to Zurich's claim for declaratory judgment and grant its Motion for Judgment on the Pleadings for the reasons stated in the November 1, 2021 Order and/or for the additional reasons set forth in Zurich's Motion to Dismiss (D.E. #85) and reply brief in support thereof (D.E. #96), including, but not limited to, the Contamination, Loss of Use, and Law or Ordinance exclusions.

IV.    **CONCLUSION**

WHEREFORE, Zurich respectfully requests that the Court grant its Motion for Judgment on the Pleadings, enter judgment in Zurich's favor, and award any further relief deemed just and proper under the circumstances.

This 3rd day of November, 2021

Respectfully submitted,

*/s/ Christina M. Carroll*
Shari L. Klevens (admitted *pro hac vice*)
Christina M. Carroll (admitted *pro hac vice*)
DENTONS US LLP
1900 K Street NW
Washington, D.C. 20006
Telephone: 202.496.7500
shari.klevens@dentons.com
christina.carroll@dentons.com

Lisa Ann Pach
Florida Bar Number: 0065002
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone: 305.789.9331
lpach@stroock.com

*Counsel for Plaintiff*
*Zurich American Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2021, the foregoing Motion for Judgment on the Pleadings and Incorporated Memorandum of Law in Support was filed with the Clerk of the Court using the CM/ECF system, which will provide notice to counsel for the parties.

*/s/ Christina M. Carroll*

Christina M. Carroll
